IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                    CASE NO. 1:05cr40-SPM

LORENZO VALERA, et al.,

     Defendants.

_____/

## ORDER DENYING MOTION TO SUPPRESS

Defendant Lorenzo Valera's motion to suppress evidence (doc. 191) was heard on February 14, 2006. Valera contends that evidence and statements obtained during the search of his house should be suppressed because the consent given for the search was not voluntary. For the following reasons, the motion will be denied.

### I.     BACKGROUND

Testimony at the hearing established that on September 10, 2005, during the late morning and early afternoon hours, four law enforcement officers from the Drug Enforcement Agency in Miami conducted a search of Valera's house. They were assisted by Evelyn Mendoza, a Spanish-speaking Miami Dade police officer.

From the outset, the intent of the officers was to conduct a "knock and

talk" at the residence.  That is, they intended to knock on the door, talk to an

occupant about suspected illegal activity, and obtain consent to search the

house.  When the officers arrived at the house, however, they were unable to

knock on the door and talk to an occupant as planned.  The driveway gates,

which provide access to the house, were closed.  No one was in the front

courtyard, which is enclosed by a concrete and iron fence that joins with a

concrete wall and continues around the sides and back of the house.

      At the request of the lead DEA officer, Rufus Wallace, Officer Mendoza

activated the sirens on her patrol car for a period of 30 to 40 seconds to get the

attention of any occupants in the house.  In the meantime, Officers Ludlum and

Wallace walked around the house to see about engine noise coming from the

back.  When Officer Ludlum shouted to get the attention of an occupant, no one

responded.  Officer Ludlum then lifted himself onto the concrete wall, from where

he saw two men who were pressure washing the area around a pool and patio.

While sitting on the wall, Officer Ludlum showed his badge and shouted, "Sir,

could you please come here.  DEA.  Police."  Officer Ludlum also shouted,

"Venga aquí.  Police. DEA." which translates from Spanish to English as "Come

here.  Police. DEA."

      The two men, who were later identified as Defendant Lorenzo Varela and

his brother-in-law, started walking toward Officer Ludlum.  Before they reached

the wall where Officer Ludlum was perched, the men turned and went inside the

house.  Officer Ludlum and Officer Wallace returned to the front of the house

where the other officers were waiting.  The officers expected that one of the men would come out front to meet them.  No one came out of the house.

Looking into the house through a tinted window, the officers saw human figures walking back and forth inside.  The officers were concerned that any evidence that could be in the house was being destroyed.  After a period of about 5 minutes, a woman, later identified as Mrs. Valera, came out of the house.  The driveway gate and the garage door were opened.  Officers Wallace and Mendoza entered the courtyard area where they met with Mrs. Valera.  Moments later, Defendant Lorenzo Valera joined them.

At the request of Officer Wallace, Officer Mendoza explained to the Valeras in Spanish the reason for the officers' presence and requested consent to search the house.  Lorenzo Varela expressed reservations about allowing a search based on an experience he had about a year prior where an officer, during a consensual search of another house, drew a weapon and indicated that he would harm Lorenzo Varela's dog.

Officer Mendoza apologized for the conduct of the officer who participated in the previous search.  She assured Lorenzo Valera that she would not let that happen this time and explained that there was no harm in consenting to a search if Lorenzo Varela had nothing to hide.  Officer Mendoza also explained that if Lorenzo Varela did not consent, the officers would probably apply for a search warrant.  If so, Lorenzo Varela and the other occupants of the house would need to wait outside while the warrant application was pending.

Lorenzo Valera consented to the search of his home and signed a consent form that was written in Spanish.  During the process of obtaining consent, the officers and the Valeras were polite and cordial to each other. Officer Mendoza developed a good rapport with the Valeras and translated communications between the Valeras and the DEA officers.

While the search was taking place, Mr. Valera, Mrs. Valera, their son, and the brother-in-law were in the living room.  No one was handcuffed.  Mrs. Valera talked with Officer Mendoza about the renovations to the house and showed Officer Mendoza an album with before and after photographs.

On several occasions, the Valeras actively aided the officers in the search. When asked if there were any weapons in the house, Mr. Valera helped the officers secure two handguns that were kept in the master bedroom.  When asked if there was a large amount of money in the house, Mrs. Valera showed the officers a $180,000.00 check, which came from the sale of a house.  Later, when marijuana seedlings were discovered in a trash bag that was placed in an attic space in another room, Mr. Valera admitted to the officers that he had hidden the plants there and he showed them a cooler, located in a closet near the kitchen, where the plants had been.  Mr. Valera continued to cooperate with the officers even after the marijuana was discovered, showing the officers to a shed in the yard.

At the conclusion of the search, the officers told Mr. Valera he would be taken into custody.  The officers allowed Mr. Varela to change clothes before

leaving.  During the entire encounter, no weapons were drawn.  The officers did not express hostility toward the Valeras through their looks, tone, or actions.

## II.    DISCUSSION

As a general rule, a search warrant is required before the Government can search a person's house.  There are, however, certain exceptions.  Consent to search is one of them.  A valid search of a house may be made without a search warrant and without probable cause if the person in control thereof has given consent.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

To effectuate a valid consent, it is not required for an individual giving consent to be advised of the right to withhold consent.  Id. at 231-33.  Nor is it required that consent be an intentional relinquishment of a known right or privilege, as is the case with waiver of some constitutional rights.  Id. at 243-45.  What is required is that the consent be voluntary, that is free from coercion.  Id. at 227-28.  The voluntariness of consent is determined by "analyzing all the circumstances of an individual consent . . . , [and by] careful sifting of the unique facts and circumstances of each case. . . ."  Id. at 233.

Some factors to consider are whether the defendant was free to leave, the existence of coercive police procedure, the extent of the defendant's cooperation or awareness of a right to refuse consent, the ability of the defendant to refuse consent, the extent of the defendant's education and intelligence, and whether the defendant believed that no incriminating evidence would be found.  United States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002).  Consideration of

these factors in the instant case shows that Valera's consent to search was freely and voluntarily given.

First, Valera was free to leave in the sense that he was not under arrest at the time he gave his consent to search.  Although Officer Mendoza expressed to Valera that he might not be allowed to return into his house during the pendency of a search warrant application, her statements were reasonable under the circumstances and there were no other restrictions placed on Valera's movement.  Testimony that Officer Mendoza told Valera that he and his family would be forced to wait outside in the sun while a warrant application was sought, was not credible.

Second, the police did not use coercive procedures to obtain consent.  In arguing coercion, Valera cites to Officer Ludlum's actions in sitting on the concrete wall and shouting in Spanish for Valera and his brother-in-law to, "Come here.  Police.  DEA."  Valera and his brother-in-law, however, either did not understand Officer Ludlum or chose to ignore him.  In either case, Officer Ludlum's actions were not coercive.

Valera also cites to Officer Mendoza's activation of her siren as a coercive procedure.  The siren, however, was only activated for 30 to 40 seconds.  It is unclear whether Valera actually heard the siren, since he was at the back of the house using a pressure washer.  Defendant's son, Yadiel Valera, testified he was sleeping when the officers arrived and awoken by barking dogs.  He did not mention the siren.  The siren had little or no impact on the Valeras and did not

coerce Valera to consent to the search.

As other instances of coercive behavior, Valera complains that the officers, who were driving separate vehicles, blocked the driveway of his house when they parked.  Valera also complains that some of the officers entered the front courtyard area of the house before the gate was opened.  As to these arguments, credible testimony from the officers establishes that the officers' vehicles were parked in a manner that left a way for entry and egress.  The officers did not enter the yard before the driveway gate was opened.

The third factor to consider, the degree of Valera's cooperation or awareness of a right to refuse consent, indicates that Valera's consent was voluntary.  Valera was very cooperative with the officers and actively aided in the search of his home.  He was also aware of his right to refuse consent, as indicated by his discussion with Officer Mendoza of a previous search and his reservations about consenting to a search again.

The fourth factor, the extent of Valera's education and intelligence, again indicates that the consent was voluntary.  Valera became a citizen of the United States in 2003, and he is therefore familiar with the laws of the United States. There is no indication that Valera's intelligence is below normal.  To the contrary, Valera is a skilled electrician and he communicated and interacted appropriately with Officer Mendoza.

The final factor, whether Valera believed that no incriminating evidence

would be found, also indicates that the consent was voluntary.  Before the search

commenced, Valera had time to hide the marijuana seedlings in the attic, where

he thought the officers would not find them.

Based on the foregoing, the Court finds that Valera's consent to search

his home was freely and voluntarily given.  Accordingly, it is

ORDERED AND ADJUDGED that Defendant Lorenzo Valera's motion to

suppress evidence (doc. 191) be, and hereby is, denied.

DONE AND ORDERED this 20th day of March, 2006.

*s/ Stephan P. Mickle*

Stephan P. Mickle
United States District Judge